UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHINA NATIONAL CHARTERING, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 09 C 7629 |
| | ) | |
| PACTRANS AIR & SEA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

CHARLES P. KOCORAS, District Judge;

This matter comes before the Court on Plaintiff China National Chartering Corp.'s ("China National") petition for recognition and confirmation of a foreign arbitration award against the Defendant, Pactrans Air & Sea, Inc. ("Pactrans"). China National also moves for an award of attorneys' fees against Pactrans and seeks the entry of a final judgment against Pactrans pursuant to Federal Rule of Civil Procedure Rule 54(b). For the reasons set forth below, the foreign arbitrational award is confirmed, the Court grants an award of reasonable attorneys' fees and final judgment is entered.

## BACKGROUND

In 2006, Devon International Trading Inc. ("Devon") retained Pactrans, as a freight forwarder, to ship a load of gypsum wallboard from China to Pensacola, Florida. Pactrans is an international importer/exporter with its primary place of business located

in Bensenville, IL and branch offices located in Beijing, Tianjin, Dongguan, and Qingdao, in the People's Republic of China ("PRC"). Acting as Devon's agent, Pactrans chartered the ship M/V SANKO RALLY from China National to transport the cargo. China National is an international shipping company which ships cargo throughout the world. On April 24, 2006, Pactrans and China National signed a Uniform General Charter Agreement ("Charter Agreement") securing China National's shipping vessel for the transportation of the wallboard. The Charter Agreement included a provision for the arbitration of disputes arising from the Charter Agreement to take place in Beijing, China. When the shipment of wallboard arrived in Pensacola in June 2006, an inspection of the cargo revealed that it had been damaged during transport.

A prolonged series of litigation ensued. In November 2006, China National filed suit in the Southern District of New York seeking the pre-judgment attachment of Pactrans's assets to resolve its demurrage claim. *China Nat. Chartering Corp. v. Pactrans Air & Sea, Inc.*, 2009 WL 3805596 (S.D.N.Y. Nov. 13, 2009).

While the Southern District of New York suit was pending in the United States, China National pursued the arbitration of its demurrage claims against Pactrans in Beijing, China. In February 2009, China National and Pactrans appeared before the China Maritime Arbitration Commission ("CMAC") to arbitrate China National's

demurrage charge. On March 31, 2009 the CMAC found in favor of China National issuing an award of $543,814.74, plus attorney and handling fees totaling $105,056.41 and arbitration costs of $8,575.53.

Pursuant to the procedures of PRC Arbitration Law, on August 7, 2009, Pactrans appealed the CMAC arbitration award to the Tianjin Maritime Court. Pactrans raised a multitude of procedural and substantive legal issues challenging the CMAC award. On October 14, 2009, the Tianjin Maritime Court affirmed the CMAC award and thoroughly addressed the reasoning for its decision. China National then sought the recognition and enforcement of the CMAC award in the Southern District of New York. *Id*. On November 13, 2009, the district court for the Southern District of New York confirmed the foreign arbitration award, and awarded judgment in the amount of the CMAC award. *Id.* Pactrans appealed the district court's determination of personal jurisdiction in the matter to the Second Circuit Court of Appeals.

On December 8, 2009, China National filed a petition for the recognition of a foreign arbitration award with this Court.[1] This Court stayed the case pending the resolution of Pactrans's appeal to the Second Circuit. *China Nat. Chartering Corp. v.*

---

[1]China National's petition correctly states the proper name for this Court in the Heading portion. However it appears that the substantive pleading section of the motion was previously used for China National's petition in the Southern District of New York, without changing the court's name. Since the Heading portion of the petition correctly states the proper name for this Court, we recognize China National's intent to ask this District Court, in the Northern District of Illinois, to grant its petition.

*Pactrans Air & Sea, Inc.*, 09-cv-7629, No. 30 (N.D. Ill. Jul. 13, 2010). On January 19, 2011, the Second Circuit determined that the maritime attachment of wire funds did not provide the district court with personal jurisdiction over Pactrans. *China Nat. Chartering Corp. v. Pactrans Air & Sea, Inc.*, 411 Fed. Appx. 370 (2nd Cir. 2011). The district court for the Southern District of New York dismissed China National's petition to enforce the foreign arbitration award accordingly. *China Nat. Chartering Corp. v. Pactrans Air & Sea, Inc.*, 2012 WL 3101274 (S.D.N.Y. Jul. 31, 2012). On August 22, 2012, this Court lifted the stay of the case and further took under advisement the merits of China National's petition. *China Nat.*, 09-cv-7629, No. 39 (N.D. Ill. Aug. 22, 2012). The parties have completed briefing and the issues are ripe for decision.

## LEGAL STANDARD

Confirmation of foreign arbitration awards are governed by the Convention on Recognition and Enforcement of Foreign Arbitral Awards, commonly known as the New York Convention ("Convention"). *See Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 588 (7th Cir. 2001). The requirements of the Convention were incorporated into federal law in Chapter 2 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 201, *et seq.* "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international

contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

Under 9 U.S.C. § 207, within three years after an award falling under the Convention is made, "any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

Comporting with the deference accorded to foreign arbitral awards, Article 5 of the Convention enumerates seven narrow grounds which can serve as the basis for a courts refusal to recognize and enforce a foreign arbitration award. *See Slaney,* 244 F.3d at 588. Pactrans opposes confirmation of the foreign arbitration award and argues that Article 5 bars enforcement based on 1) the invalidity of the arbitration agreement, 2) its lack of ability to present its case, 3) the failure of the arbitration panel to follow the applicable law, and 4) recognition of the arbitration award would be against the public policy of the United States. The Court will address each in turn.

- 5 -

## DISCUSSION

### I. Validity of Arbitration Agreement

Pactrans first contends that the arbitration provision contained in the Charter Agreement did not conform with the requirements of a valid arbitration agreement under PRC Arbitration Law. This failure Pactrans argues, means that the CMAC did not have jurisdiction to arbitrate the disputed claims, and consequently under Article 5(1)(a) the enforcement of the award must be denied. Article 5(1)(a) provides that "recognition and enforcement of the award may be refused if the competent authority in the country where recognition and enforcement is sought finds that . . . the [arbitration] agreement is not valid under the law to which the parties subjected it to or . . . under the law of the country where the award was made." (Convention, Art. 5(1)(a)).

Pactrans raises three grounds challenging the validity of the CMAC's jurisdiction over the arbitration proceeding. Pactrans argues that the Charter Agreement failed to meet the requirements of a valid arbitration agreement by: 1) failing to specify the matters to be arbitrated, 2) failing to state the applicable law to be applied, and 3) failing to set forth the appropriate Arbitration Commission to conduct the arbitration. Under PRC Arbitration Law, a valid arbitration agreement must contain: 1) the assent of the parties to arbitrate their claims, 2) the matters to be arbitrated, 3) the Arbitration

- 6 -

Commission selected by the parties. Article 16 Chapter III, Arbitration Law of the PRC, Adopted 1994.

Before we examine the contract, the Court recognizes "[t]he preeminent concern of Congress in passing the [Arbitration] Act was to enforce private agreements into which parties had entered, a consideration which requires that we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). When parties agree to have their disputes resolved through arbitration, they also agree to accept the arbitrator's view of the facts and the meaning of the contract. *See United Paperworkers Int'l. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987). In interpreting a contract the court's primary objective is to effectuate the intent of the parties from the plain language of the agreement. *See, e.g., Church v. General Motors Corp.*, 74 F.3d 795, 798 (7th Cir. 1996).

## A. Matters to be Arbitrated

Pactrans argues that the Charter Agreement did not adequately specify the matters which could be brought to arbitration. In box 25 of the Charter Agreement, within the Law and Arbitration section the contract states: "Arbitration in Beijing, China." The Charter Agreement provides that if the location of the arbitration is given, as in this case, then the provisions of 19(c) apply. Charter Agreement provision 19(c) states that; "[a]ny dispute arising out of this Charter [Agreement] shall be referred to

arbitration at the place indicated in box 25, subject to the procedures applicable there. The laws of the place indicated in box 25 shall govern this Charter [Agreement]."

The Charter Agreement clearly indicates that the parties intended to submit their claims to arbitration in Beijing, China. In choosing the location of the arbitration proceeding, the parties assented to the provisions of section 19(c). Section 19(c) clearly states that any matter arising out of the Charter Agreement is subject to arbitration. In this case, the heart of the CMAC arbitration proceeding dealt with resolving which party would be responsible for incurring the demurrage costs, laid out in the Charter Agreement. Due to the specificity of the matters which encompass the arbitration agreement the Court finds that the arbitration agreement satisfies the "matters to be arbitrated" requirement for a valid arbitration agreement under PRC law. Article 16, Arbitration Law of PRC.

## B. Applicable Arbitration Law

Pactrans argues that English Arbitration Law should have governed the arbitration dispute, as opposed to PRC Arbitration Law. Pactrans's contention is without support or merit. As indicated above, the Charter Agreement section 19(c) states that the applicable law of the location indicated on the form, Beijing, China, would be applied to any arbitration proceeding. According to the language of the

Charter Agreement the CMAC correctly applied PRC Arbitration Law, which is the law which governs arbitration disputes in Beijing, China.

## C. Arbitration Commission

Pactrans asserts that the failure of the Charter Agreement to include the appropriate Arbitration Commission results in an incomplete arbitration agreement under PRC law. Pactrans relies on Article 18 of the PRC Arbitration Law which states in pertinent part that if the agreement is not clear about the selection of the Arbitration Commission and the parties have failed to reach a supplemental agreement then the arbitration agreement shall be invalid. Article 18 Chapter III, Arbitration Law of the PRC, Adopted 1994.

The evidence in the record prominently shows that Pactrans assented to the CMAC arbitration. "If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000). On August 8, 2007, Pactrans's attorney sent a letter to China National stating, "[w]e are counsel for Pactrans and on behalf of our client, confirm agreement to arbitration of demurrage claims before CMAC." Pactrans's assent to arbitrate its claims before the CMAC cannot be reconciled with its current challenge to the validity of the arbitration agreement. Pactrans's agreement to arbitrate its dispute

before the CMAC constituted a supplemental agreement which properly established the CMAC as the Arbitration Commission to hear the case.

For the aforementioned reasons the Charter Agreement constituted an enforceable arbitration agreement under PRC Arbitration Law and therefore was properly before the CMAC to arbitrate the dispute.

## II. Ability to Present Case

Pactrans contends that the CMAC limited Pactrans's ability to introduce evidence and cross examine witnesses which resulted in a denial of Pactrans's fundamental right to due process. Under Article 5(1)(b) of the Convention, proof that a party was "unable to present his case" constitutes a proper defense. (Convention, Art. 5(1)(b)). The application of this defense corresponds to the due process defense that a party was not given the opportunity to be heard at a meaningful time and in a meaningful manner as defined in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). *Generica Ltd. v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1129 (7th Cir. 1997). An arbitral award should not be enforced if Pactrans proves that they were not given a meaningful opportunity to be heard, as due process jurisprudence defines it. *Id.* The arbitration panel provides a fundamentally fair hearing if adequate notice is given, a hearing on the evidence is provided, and the decision of the arbitrator is impartial. *Id.*

## A. Introduction of Evidence

Pactrans argues that during the arbitration proceeding, CMAC unfairly admitted and considered all of the evidence submitted by China National and expressly refused to consider the evidence tendered by Pactrans. Pactrans concludes that if its evidence would have been considered the results of the arbitration proceeding would have been different.

"Our judicial system is not meant to provide a second bite of the apple for those who have sought adjudication of their disputes in other forums and are not content with the resolution they have received." *Slaney*, 244 F.3d at 581. The Supreme Court has noted that "[a]rbitrators are not bound by the rules of evidence." *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203-04 n.4 (1956). Nor are arbitrators required to hear all of the evidence tendered by the parties. *Hoteles Condado Beach v. Union De Tronquistas,* 763 F.2d 34, 39 (1st Cir. 1985). District courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. *See United Paperworks*, 484 U.S. at 37-38.

Pactrans mainly cites its failed attempts to admit several substantive emails between the parties, which allegedly establish a defense to China National's claim. The CMAC award opinion provided a detailed description of the evidence offered by China National and Pactrans in conjunction with a description of what each piece of evidence

- 11 -

sought to prove. Additionally the CMAC ruling contains arguments for and against the admission of the evidence and finally the CMAC's decision on the evidence. The CMAC thoroughly reviewed the admissibility of each piece of evidence and reached a conclusion based on the application of PRC Arbitration Law. Ultimately the arbitration panel determined that some of the evidence submitted by Pactrans was not credible and expressed their doubts concerning the authenticity, legality, and relevance to the case.

Contrary to Pactrans's assertion, they were able to submit their evidence to the CMAC for consideration. Pactrans submitted its evidence to the CMAC which had the duty to weigh the credibility and relevance of the evidence to assess its importance in reaching a final decision. Although the final determinations on the value of the submitted evidence did not yield a positive result for Pactrans, the CMAC did take the evidence into consideration. Pactrans has not pointed to a single instance where the evidentiary ruling of the CMAC failed to comport with the standards of due process. Pactrans is not able to sustain a due process claim based on their lack of opportunity to submit evidence.

## B. Cross Examination

Pactrans contends that the CMAC unjustly suppressed its right to cross examine witnesses, which interfered with their ability to present their case. However, a review of the record shows that no oral witness testimony was offered during the arbitration

proceeding. Pactrans does not point to a single instance when they attempted to cross examine a witness and was prevented from doing so. Without substantive examples establishing their assertion, Pactrans's complaint alleging a prohibition on cross examination is not persuasive when countered with the evidence establishing a complete lack of testimony. For the aforementioned reasons the Court finds that the CMAC did not prevent Pactrans from cross examining witnesses and presenting its case. A review of the CMAC proceeding makes it clear that Pactrans was afforded all the process that it was due.

### III. In Accordance with the Laws of the Arbitration Forum

Pactrans asserts that the CMAC failed to follow PRC Arbitration Law. Article 5(1)(d) provides a defense against enforcement if the procedures employed by the arbitration panel were not in "accordance with the law of the country where the arbitration took place." (Convention, Art. 5(1)(d)). Pactrans highlights several rulings which they assert were contrary to the law of the PRC. First, Pactrans claims that the CMAC awarded attorney and handling fees in excess of what PRC Arbitration Law allows. Second, Pactrans states that they were prejudiced by the incorrect Notification of Arbitration they received from the CMAC. Finally, Pactrans argues that the CMAC impermissibly allowed China National to be represented by an attorney who was not permitted to practice before the CMAC.

**A. Fees Awarded**

Pactrans asserts that the CMAC panel did not follow CMAC Arbitration Law when it calculated the award for attorney and handling fees. CMAC Arbitration Article 66 allows for the losing party to pay for expenses "incurred by the winning party in dealing with the case." Article 66 Chapter II, CMAC Arbitration Rules, Adopted 2004. However, Rule 66 caps the potential award at 10% of the total amount awarded to the winning party. *Id.* The CMAC awarded China National $543,814.74 for the demurrage charge claim. Pactrans asserts that the attorney and handling fee award in the amount of $105,056.41 was above the statutory maximum allowable by CMAC Arbitration Law Rule 66. China National argues that Pactrans waived its argument concerning the CMAC's calculation of attorney and handling fees when they failed to raise it with the CMAC panel and the Tainjin Maritime Court.

Generally, waiver is "the intentional relinquishment of a known right." *Sethness-Greenleaf, Inc. v. Green River Corp.*, 65 F.3d 64, 67 (7th Cir. 1995). Waiver of a contractual right can be express or implied from actions taken which are inconsistent with the assertion of a right. *Cent. States, Se. and Sw. Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 672 (7th Cir. 2005). "It is axiomatic that arguments not raised below are waived on appeal." *Keene Corp. v. International Fidelity Ins. Co.*, 736 F.2d 388, 393 (7th Cir. 1984).

CMAC Arbitration Article 68 permits either party to request the CMAC to review any "writing, typing, calculating, and similar errors contained in the award within 30 days from the date of receipt of the award." Article 68 Chapter II, CMAC Arbitration Rules, Adopted 2004. Pactrans did not submit a request for the CMAC to review the calculation of fees, and likewise Pactrans failed to challenge the calculation of fees with the Tainjin Maritime Court. Because Pactrans chose to omit its challenge to the attorney and handling fees award from the CMAC and the Tainjin Maritime Court, their claim is implicitly waived. *See Winforge, Inc. v. Coachment Industries, Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) (explaining that waiver applies where a party voluntarily or intentionally relinquishes a known right).

**B. Notification of Arbitration Proceeding**

Pactrans argues that the Notice of Arbitration sent to them by the CMAC was defective and prejudiced the preparation of their defense. Pactrans points to the fact that the original Notice of Arbitration stated the arbitration was a domestic case and the applicable law to be applied was China International Economic and Trade Arbitration Regulations, as opposed to Chinese Maritime Arbitration Law.

Pactrans fails to specify how it was prejudiced by the incorrect Notice of Arbitration. The record indicates that the misprint was limited to the Chinese language portion of the Notice of Arbitration. The English version of the Notice of Arbitration correctly stated the appropriate case classification and applicable arbitration law.

Finally the record shows that at the initial arbitration proceeding Pactrans raised the issue involving the incorrect Notification of Arbitration. The CMAC cured any potential damage by adjourning and rescheduling the hearing for a later date. The Court finds that Pactrans was not prejudiced in the preparation of its defense.

## C. Presence of Attorney During Proceeding

Pactrans contends that the CMAC wrongfully allowed China National to be represented by Lianjun Li ("Li"), of the Hong Kong law firm Richards Butler, who was not permitted to practice in mainland China. Pactrans asserts that China National's representative was acting as an attorney, as opposed to an authorized agent, which was impermissible under CMAC Arbitration Law.

Article 21 of the CMAC Arbitration Rules allows parties to choose authorized agents and authorized attorneys to deal with matters related to the arbitration proceeding. Article 21 Chapter II, CMAC Arbitration Rules, Adopted 2004. When the issue of China National's representation was raised during the CMAC hearing, the panel reasoned that Article 21 does not restrict an individual's participation in the arbitration proceeding based on his nationality being other than that of the PRC. The record demonstrates that prior to the CMAC proceeding, Pactrans was asked if they objected to Li's presence and representation of China National, which they did not. Without an objection from Pactrans the CMAC panel allowed Li to assist with the arbitration on China National's behalf. Additionally, China National was primarily represented by

Henry Hai Li ('Hai Li"), from a law firm based in Shenzhen, PRC. Li was supposed to represent China National during the initial hearing, however it was postponed. Thereafter Hai Li assumed the role of lead counsel throughout the rest of the arbitration proceeding, with Li attending the remainder of the proceedings as a representative of China National. In consideration of permissible allowance of representation contained in Article 21 of the CMAC Arbitration Rules and Pactrans's assent to Li's presence, Pactrans's parsing of the type of representation Li was acting under is unconvincing.

## IV. Public Policy

Pactrans lastly contends that a conflict of interest between the CMAC and China National existed because both are controlled by the Chinese Government. Pactrans argues this conflict of interest warrants the denial of the arbitration award on public policy grounds, contained in Article 5(2)(b). Article 5(2)(b) provides that, "[r]ecognition and enforcement of an Arbitral Award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that . . . the recognition or enforcement of the award would be contrary to public policy of that country." (Convention, Art. 5(2)(b)). The Convention's public policy defense has been narrowly construed to give effect to the Convention's goal of encouraging the timely and efficient enforcement of awards. *Slaney*, 244 F.3d at 593 (citing *Fotochrome, Inc. v. Copal Co., Ltd.*, 517 F.2d 512, 516 (2d Cir. 1975)). As the Second Circuit noted, "an expansive construction of this defense would vitiate the Convention's

basic effort to remove preexisting obstacles to enforcement." *Parsons & Whittemore Overseas Co., Inc., v. Societe Generale De L'Industrie Du Papier (RAKTA),* 508 F.2d 969, 973 (2d Cir. 1974).

Pactrans asserts that China National's association with the Chinese Government prohibited them from obtaining a fair hearing. Pactrans mainly supports its proposition by pointing to the disparate results obtained between the contested Beijing CMAC arbitration proceeding and a completely different CMAC arbitration proceeding in Shanghai which Pactrans participated in. Pactrans claims that the Shanghai CMAC arbitration proceeding which involved Pactrans and Devon, both U.S. companies, was starkly different from the Beijing CMAC proceeding. In supporting their argument for the bias of the Beijing CMAC proceeding, Pactrans merely restates all the aforementioned issues at the heart of its argument against enforcement of the arbitration award. As discussed above the procedures of the arbitration proceeding were conducted in accordance with the terms of the Charter Agreement and PRC Arbitration Law. This Court is mindful of its limited role in reviewing the Beijing CMAC arbitration award and we decline the invitation to delve into a secondary Shanghai arbitration proceeding conducted by a different arbitration panel, in a different location, concerning different parties. The Court is not convinced that the procedures employed by the CMAC are indicative of a biased proceeding to substantiate a disqualifying relationship.

Absent support for its argument, the Court is left with Pactrans's assertion that China National's involvement with the Chinese Government influenced the arbitration proceeding. Pactrans has not provided sufficient evidence showing that a bias existed, or that any such connection had a substantive effect on the arbitration proceeding. Pactrans's conclusory assertion does not amount to a disqualifying claim that would be contrary to the public policy of this country.

## V. Attorneys' Fees

China National seeks an award of attorneys' fees against Pactrans. China National argues that Pactrans asserted misleading and groundless arguments in the course of contesting the confirmation of the foreign arbitration award. Under the American rule, a party must pay its own attorneys' fees and expenses unless there is express statutory authorization to the contrary. *Fednav Intern. Ltd. v. Cont'l. Co.,* 624 F.3d 834, 838-39 (7th Cir. 2010). However when a party acts, "in bad faith, vexatiously, wantonly, or for oppressive reasons," a court may award attorneys' fees under its inherent equitable powers. *See F.D. Rich Co., Inc., v. United States,* 417 U.S. 116, 129 (1974).

Pactrans has engaged in a prolonged struggle to contest the confirmation of the foreign arbitration award. In the course of their pursuit, Pactrans has submitted baseless and un-substantiated arguments to support their position. Pactrans's arguments

concerning the appropriateness of the CMAC as the proper Arbitration Commission, its lack of opportunity to cross examine witnesses, the prejudicial effect of the incorrect Notification of Arbitration, the presence of a China National representative during the arbitration proceeding, and the bias of the CMAC proceeding were submitted under the guise of legitimacy, but lacked any meritorious foundation. The Court finds that an award of reasonable attorney's fees is warranted based on Pactrans's submission of baseless arguments which unnecessarily multiplied the proceedings. The Court encourages the parties to resolve the award of reasonable attorneys' fees amongst themselves, prior to submitting the allocation of fees to the Court's discretion. The Court does not find that punitive damages should be imposed.

## VI. Motion for Final Judgment

China National moves the Court for entry of a final judgment against Pactrans based on the Court's confirmation of the arbitration award. There are three prerequisites to the entry of a judgment under Rule 54(b). First, the claim upon which certification is sought must constitute a single "claim for relief." *See, e.g., Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*, 860 F.2d 1441, 1444-45 (7th Cir. 1988). Second, the judgment entered on the claim must be final within the meaning of 28 U.S.C. § 1291. *See United States v. Ettrick Wood Prod., Inc.*, 916 F.2d 1211, 1217 (7th Cir. 1990) (judgment is final when it resolves all claims against a particular party). Finally, we must find that there is no just reason for delay, taking into consideration

judicial efficiency and equity. *Curtiss-Wrights Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980) (Rule 54(b) determination based on "judicial administrative interests as well as the equities involved.").

The confirmation of the foreign arbitrational award resolves all claims brought by China National in this action. A judgment in China National's favor will also result in the conservation of judicial resources and will not prejudice any party. The Court finds that the judgment is final and there is no reason for delay and therefore grants final judgment, in the amount of the total CMAC Arbitration Award, in favor of China National against Pactrans pursuant to Rule 54(b).

## CONCLUSION

For the reasons set forth above, China National's petition for confirmation of the foreign arbitration award is granted. China National's request for attorneys' fees is granted. China National's motion for entry of a final judgment is granted.

_____
Charles P. Kocoras
United States District Judge

Dated:  December 6, 2012